United States District Court
Southern District of Texas

**ENTERED**

February 09, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISAAC LAMAR THOMAS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-3764 |
| | § | |
| LORIE DAVIS,[1] DIRECTOR, TEXAS | § | |
| DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS  DIVISION, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is

Respondent's Motion for Summary Judgment (Document No. 18) against Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1).   Having considered the motion,

Petitioner's Traverse in response (Document No. 28), the claims raised by Petitioner in his § 2254

Application and Supplement  thereto (Document No. 5), the state court records, and the applicable

law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's

Motion for Summary Judgment (Document No. 18) be GRANTED, that Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1) be DENIED, and that this case be

DISMISSED WITH PREJUDICE.

---

[1] Lorie Davis, the new Director of the Texas Department of Criminal Justice, Correctional
Institutions Division, is substituted as Respondent.  *See* FED. R. CIV. P. 25(d).

## I.   **Introduction and Procedural History**

Isaac Lamar Thomas ("Thomas") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of a 2012 aggravated robbery conviction in the 410th District Court of Montgomery County, Texas, cause no. 10-02-01613-CR, for which he was sentenced to twenty-five (25) years imprisonment.   Thomas was charged by indictment with that offense on February 9, 2010, with the Indictment alleging:

> Isaac Lamar Thomas, hereinafter styled Defendant, on or about January 05-2010, and before the presentment of this indictment, in the County and State aforesaid, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Mohammad Mehboob in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to wit: a firearm.

Thomas pled not guilty and proceeded to trial.   On June 6, 2012, a jury found Thomas guilty, and he was thereafter sentenced by the court following a punishment hearing on August 3, 2012, to twenty-five years incarceration.

Thomas appealed his conviction.   On September 18, 2013, Texas' Ninth Court of Appeals affirmed the conviction in an unpublished opinion. *Thomas v. State*, No. 09-12-00458-CR.   Thomas' petition for discretionary review was then refused by the Texas Court of Criminal Appeals on March 12, 2014.   Thomas did not file a petition for writ of certiorari.

On May 29, 2013, prior to the issuance of the appellate decision, Thomas filed a state application for writ of habeas corpus.   That application was dismissed on July 31, 2013, because Thomas' direct appeal was still pending.   Thomas then filed a second state application for writ of habeas corpus on December 1, 2014, which was denied by the Texas Court of Criminal Appeals on November 18, 2015, on the findings of the state trial court without a hearing.   This § 2254 proceeding, filed by Thomas on December 21, 2015, followed.

Respondent has filed a Motion for Summary Judgment (Document No. 18), to which Thomas has filed a Traverse in response (Document No.28).  This § 2254 proceeding is ripe for ruling.


II.    **Factual and Evidentiary Background**

The factual and evidentiary background, as set forth by Texas' Ninth Court of Appeals in affirming Thomas' conviction, is as follows:

> The record establishes that two men entered the complainant's residence, restrained him, assaulted him, stole items from the home, threatened his life, and then drove away.  The complainant testified that during the robbery Thomas told him that "this isn't personal[,]" and that Thomas and the other man wanted to settle a score with the complainant's brother.  The complainant's brother testified that Thomas had been to the residence twice before – one time right before the robbery.  The brother testified that a drug deal he had with Thomas had "gone bad[.]"  The brother named Thomas as a potential subject.
>
> The complainant testified he saw Thomas up close during the aggravated robbery and later identified him in a photographic lineup and again at trial as one of the two men who robbed him.  The complainant also testified that Thomas had a gun during the robbery.  The complainant identified the gun at trial as the gun that Thomas had used during the robbery, and the gun which Thomas left at the complainant's residence.  The complainant testified that the intruders beat him, and that Thomas struck him in the face, handcuffed his hands behind his back, and tied his legs with a belt.  Thomas took various items from the residence.

*Thomas v. State*, No. 09-12-00458-CR at 2-3.


III.    **Claims**

Thomas raises numerous claims challenging his aggravated robbery conviction, alleging:

1.    that he is actually innocent of the offense;

2.    that the prosecutor engaged in misconduct by: (a) arguing outside of the record during closing argument; (b) mis-stating the evidence during closing argument; (c) expressing a personal belief as to Thomas' guilt during closing argument; (d) commenting on Thomas' failure to testify during closing argument; and (e) bolstering the credibility of the complainant during closing argument;

3.      that his trial counsel was ineffective for: (a) failing to present evidence of mistaken identity; (b) failing to call Charles Thomas to testify in support of a mistaken identity defense; (c) failing to call Linda Thomas to testify in support of a mistaken identity defense; (d) failing to present expert witness testimony on "cross racial identification" and/or witness misidentification; (e) failing to seek the exclusion of, or move to strike the testimony of, "Hassan," the complainant's brother; (f) failing to object to the jury charge, which did not include an instruction on the consideration of extraneous offenses; (g) failing to object at trial to extraneous offense evidence; (h) failing to file a motion to quash the indictment; (i) failing to present an un-redacted copy of Thomas' video-taped statement; (j) failing to request a jury instruction on the voluntariness of his Thomas' statement;  (k) failing to request a hearing on the voluntariness of his statement; (l) failing to object to the prosecution's bolstering of the complainant's credibility; (m) failing to object to the prosecutor's stated personal belief in Thomas' guilt; (n) failing to object to the prosecutor's comments on his failure to testify; (o) failing to object to the prosecutor's misrepresentation of the evidence; and (p) failing to object to the complainant's identification of the weapon used during the offense;

4.      that there was insufficient evidence to support his conviction;

5.      that the jury charge was defective; and

6.      that the indictment was defective.

In the Motion for Summary Judgment, Respondent first argues that Thomas has not exhausted his state law remedies with respect to his claim that counsel was ineffective for failing to object to the complainant's identification of the weapon used during the offense (claim 3(p)), and that that claim is unexhausted and procedurally barred from review.  Next, Respondent argues that all of Thomas' prosecutorial misconduct claims (claims 2(a) - 2(e)) are procedurally barred from review because they were not raised by Thomas in his direct appeal, as they should have been, and as was determined by the Texas Court of Criminal Appeals in rejecting Thomas' state application for writ of habeas corpus.  As for Thomas' claims of actual innocence and that the indictment was defective (claims 1 and 6), Respondent argues that such claims are not cognizable or redresaable in this § 2254 proceeding.  Finally, Respondent maintains that no relief is available on the  remainder

4

of Thomas' claims (claims 3(a)-3(o), 4, and 5) because the Texas Court of Criminal Appeals' rejection of those claims was not contrary to and did not involve an unreasonable application of clearly established Federal law as established by the Supreme Court of the United States and was not based on unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d).

## IV.      Standards of Review

### A.      Exhaustion and related Procedural Bar

Federal habeas corpus petitioners are required to exhaust their available state law remedies. *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993).  In order to exhaust state law remedies, Texas prisoners must fairly present their claims to the highest state court, the Texas Court of Criminal Appeals, TEX. CODE CRIM. PROC. ANN. art. 44.45, through a petition for discretionary review and/or a state application for writ of habeas corpus.  TEX. R. APP. P. 68; TEX. CODE CRIM. PROC. ANN. art. 11.07, et seq.  "'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.'"  *Ex Parte Wilder*, 274 F.3d 255, 259-260 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  Rather, the petitioner must have presented the highest state court with the same claim, the same factual basis for the claim, and the same legal theory in order to meet the exhaustion requirement.  *Id.*  "[F]leeting reference to the federal constitution," especially when such reference is not accompanied by any federal case law authority, generally does not suffice to "alert and afford a state court the opportunity to address an alleged violation of federal rights," and that "vague references to such expansive concepts as due process and fair trial" in a state court proceeding will not satisfy the exhaustion requirement.  *Id.* at 260.

5

When unexhausted claims are contained in a § 2254 application, and when such claims, if the petitioner tried to exhaust them in state court, "would be barred by the abuse-of-the-writ doctrine of Article 11.071 of the Texas Code of Criminal Procedure," the claims should be dismissed with prejudice as procedurally barred. *Horsley v. Johnson*, 197 F.3d 134, 137 (5th Cir. 1999); *see also Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) ("A procedural default also occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"), *cert. denied*, 523 U.S. 1139 (1998). Only when the petitioner makes a colorable showing that his unexhausted claims would be considered on the merits by the state courts if he attempted to exhaust them, should the claims be dismissed without prejudice. *Horsley,* 197 F.3d at 136-137.

**B.    State Law Procedural Bars**

Federal courts are precluded from considering claims which were rejected by the last state court to have considered them on the basis of a state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989). In order for a state court's rejection of a habeas claim to act as a procedural bar to review in a federal habeas proceeding, the state court must, in a plain statement, determine that its rejection of the claim rests on adequate and independent state procedural grounds. *Harris*, 489 U.S. at 261; *Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Once a state court relies on a procedural default for rejecting a habeas claim, a federal court in a federal habeas proceeding cannot review such a claim unless the petitioner shows cause and prejudice associated with the default or shows that absent a review of the claim by a federal court a fundamental miscarriage of justice will result. *Coleman*, 501 U.S. at 750. A fundamental

6

miscarriage of justice occurs when a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Sawyer v. Whitley*, 945 F.2d 812, 816 (5th Cir.) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)), *cert. granted*, 502 U.S. 965 (1991), *and aff'd*, 505 U.S. 333 (1992).

### C.    Merits Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'"  *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*,

7

538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the

federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to

9

show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).   Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).  A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s).  *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

## V.     Discussion

### A.     Unexhausted Claim

In a Supplemental pleading (Document No. 5), filed before Respondent filed its Motion for Summary Judgment, Thomas asserted an additional ineffective assistance of trial counsel claim: that his trial counsel was ineffective for failing to object to the complainant's identification of the weapon at trial (claim 3(p)).  Thomas did not raise this claim – in any form – in his state application for writ of habeas corpus or in any other state court proceeding.  That claim is, consequently, unexhausted. In addition, because Thomas can not now raise that claim with the Texas Court of Criminal Appeals in any other state court proceeding without running afoul of Texas' abuse-of-the-writ doctrine, and because Thomas has not established cause and prejudice associated with his failure to raise that claim with the state courts or that a miscarriage of justice will occur if the claim is not considered on the merits  herein, that unexhausted ineffectiveness claim (claim 3(p)), as argued by Respondent, is unexhausted and procedurally barred from review in this § 2254 proceeding.

### B.     Prosecutorial Misconduct Claims

In five claims, and a catch-all cumulative error claim (claims 2(a) - (e)), Thomas complains about the conduct of the prosecutor during closing argument.  The record shows that Thomas did not raise any of these claims in his direct appeal.  In addition, in connection with his state application for writ of habeas corpus, the Texas Court of Criminal Appeals determined, upon the findings of the state trial court, that the prosecutorial misconduct claims were "based entirely on the appellate record, and could have been raised on direct appeal" and that such claims, which "could have been raised on appeal [were] not cognizable i[n] a writ of habeas corpus." Findings of Fact and Conclusions of Law (Document No. 14-5 at 55, 57).  That determination by the Texas Court of Criminal Appeals, which was based on a state procedural default, bars consideration of Thomas' prosecutorial misconduct claims herein given Thomas' failure to make the requisite cause and prejudice showing or establishing that a fundamental miscarriage of justice will result if the claims are not considered on the merits.

In his Traverse, Thomas maintains that he could not have raised the prosecutorial misconduct claims on direct appeal because his trial counsel did not preserve error.  In addition, Thomas maintains that his trial counsel's ineffectiveness is "cause" for his failure to raise the prosecutorial claims on appeal, and that the prosecutor's numerous, improper statements and arguments during closing affected the jury verdict.  As set forth more fully below, counsel's failure to object to the prosecutor's statements and argument during closing cannot be viewed as deficient performance under *Strickland*, nor can counsel's performance in this regard be said to have affected the outcome of Thomas' trial.  Therefore, based on the consideration of Thomas' ineffectiveness claims, below, Thomas has not established the requisite cause for his failure to raise his prosecutorial misconduct claims on appeal, and such claims, based on the Texas Court of Criminal Appeals' findings, were

procedurally barred from review in the state habeas proceeding, and are, likewise, procedurally barred from review herein.[2]

### C.  Actual Innocence Claim

Thomas maintains that he is actually innocent of the aggravated robbery offense (claim 1). He bases that claim on allegations that there was no physical or DNA evidence connecting him to the crime and the complaining witness' testimony was inconsistent.  As argued by Respondent, a stand-alone actual innocence claim is not cognizable in a § 2254 proceeding.

"Supreme Court jurisprudence does not support an independent claim for federal habeas relief based on an allegation of actual innocence." *Dowthitt v. Johnson*, 180 F.Supp.2d 832, 843 (S.D. Tex. 2000) (Atlas, J.).  A claim of actual innocence may, however, be a "'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 512 U.S. 298, 316 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).  To serve as such a "gateway", however, a petitioner must "support his allegations of

---

[2] This is true regardless of the state courts' additional and specific findings on the propriety of the prosecutor's challenged arguments.  *See* Findings of Fact and Conclusions of Law at 2 (Document No. 14-5 at 56) ("5.  the prosecutor did not improperly bolster the credibility of the victim, Ali Mehboob.  6.  The prosecutor did not improperly convey a personal belief of [Thomas'] guilt.  7.  The prosecutor did not improperly comment on [Thomas'] failure to testify.  8.  The prosecutor did not misrepresent the evidence regarding Ali's identification of the weapon recovered from [Thomas'] truck.").  Those specific findings relate not only to Thomas' prosecutorial misconduct claims, but to his ineffective assistance of counsel claims as well.   Moreover, even if the Texas Court of Criminal Appeals rejected the prosecutorial misconduct claims both on the merits and on the basis of a state law procedural bar, this Court is obliged to recognize and apply the procedural bar.  *See Toliver v. Dir., TDCJ- CID*, No. 6:11CV609, 2012 WL 2524376, at *5 (E.D. Tex. May 14, 2012), *report and recommendation adopted*, No. 6:11CV609, 2012 WL 2524259 (E.D. Tex. June 29, 2012) ("[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default." *Hughes v. Dretke,* 412 F.3d 582, 592 (5th Cir.2005) (citing *Cook v. Lynaugh,* 821 F.2d 1072, 1077 (5th Cir.1987)).

constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," and must demonstrate that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 324, 327.

Here, Thomas' claim of actual innocence was not premised on an alleged independent constitutional violation and, instead, is based on what he claims was insufficient evidence: lack of DNA and/or fingerprint evidence and inconsistent witness testimony.  While Thomas argues in his Traverse that his actual innocence claim is indeed predicated on his ineffective assistance of counsel claim, (Document No. 28 at 14), which is an independent Constitutional claim which arises from the Sixth Amendment, the allegations in support of the actual innocence claim are all based on what Thomas characterizes as the lack of credible and consistent evidence to support his conviction.  As such, regardless of Thomas' arguments that his actual innocence claim is predicated on an independent constitutional violation, Thomas' allegations in support of the actual innocence claim demonstrate that this is not so.  For that reason, and because there is no new evidence to support any of his claims, *see  Cruz v. Stephens*, No. Civil Action No. SA-16-CV-167-XR, 2016 WL 3829656 *3 (W.D. Tex. July 12, 2016) (discussing requirement of new evidence to support an actual innocence claim under *Schlup*), Thomas' actual innocence claim is subject to dismissal.

### D.     Defective Indictment Claim

Thomas alleges in claim 6  that the indictment was fundamentally defective because it did not allege the theft of property from the complainant.  Respondent, in response, argues that no relief is available on this claim because defective indictment claims are rarely cognizable in federal habeas corpus proceedings and because the state courts already determined, as a matter of state law, that the indictment "alleged all the elements required" and was therefore sufficient.  *See* Findings of Fact and

Conclusions of Law (Document No. 14-5 at 58).

Issues related to state court indictments are not cognizable in federal habeas corpus proceedings unless the indictment was so fatally defective that the trial court lacked jurisdiction. *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993); *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988), *cert. denied*, 489 U.S. 1086 (1989); *Uresti v. Lynaugh*, 821 F.2d 1099, 1102 (5th Cir. 1987). If the highest state court has considered a petitioner's defective indictment claim and denied relief, federal courts cannot sit in judgment on that same issue in a federal habeas proceeding. *Yohey*, 985 F.2d at 228; *Alexander v. McCotter,* 775 F.2d 595, 598-599 (5th Cir. 1985); *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984).

Here, because Thomas raised the same claim related to the indictment with the Texas Court of Criminal Appeals in his state application for writ of habeas corpus, and because the Texas Court of Criminal Appeals rejected the claims on the merits, the claim is not cognizable in this § 2254 proceeding. *See Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (finding defective indictment claim was foreclosed in federal habeas corpus proceeding where Texas Court of Criminal Appeals had already concluded that the indictment was sufficient under Texas law).

### E.    Insufficient Evidence Claim

Complaining about the lack of physical evidence, and the inconsistencies in the complainant's identification testimony, Thomas contends, as he did in his direct appeal, that the evidence is legally insufficient to support his conviction.

The Texas Court of Appeals, in affirming Thomas' conviction, found, as follows, that the evidence was legally sufficient:

> The conviction for aggravated robbery in this case required the State to prove that the accused (1) unlawfully appropriated property with the intent to deprive the owner of the property, (2) intentionally or knowingly threatened or placed another in

fear of imminent bodily injury or death, and (3) used or exhibited a deadly weapon. *See* Tex. Penal Code Ann. § 31.03(a) (West Supp. 2012) (Theft); § 29.02(a)(2) (West 2011) (Robbery); § 29.03(a)(2) (West 2011) (aggravated robbery); *see also Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.– Houston [14th Dist.] 2012, pet, ref'd). The State must prove beyond a reasonable doubt that the defendant is the person who committed the offense. *See Bradley*, 359 S.W.3d at 916. Thomas argues the evidence is legally insufficient to establish he is the person who committed the offense. He points out that no DNA or fingerprint evidence from the scene and no evidence recovered from either of the vehicles connected him to the crime.

* * *

In determining the legal sufficiency of the evidence, the reviewing court considers the entire record in the light most favorable to the verdict and determines whether, based on the record, any rational trier of fact could have found the defendant guilty of all the essential elements of the offense beyond a reasonable doubt. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Testimony of a single eyewitness can be enough to support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). The jury may find guilt without physical evidence linking the accused to the crime. *See Bradley*, 359 S.W.3d at 917; *Johnson v. State*, 176 S.W.3d 74, 75-77 (Tex. App.–Houston [1st Dist.] 2004, pet. ref'd). As the sole judge of the credibility of the witnesses, the jury believed the complainant when he identified Thomas as the one who committed the aggravated robbery. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Vasquez v. State*, 67 S.W.3d 229, 236-37 (Tex. Crim. App. 2002).

The complainant had time to observe Thomas during the robbery. The complainant testified he could clearly see the faces of the two men. "[W]hen they were pointing the guns at me, like right at my face, I was looking at their face, trying to see what kind of expression they had, how they – how serious they were. And I pretty much, like, memorized their face." Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to support the claimant's identification of Thomas as one of the men who robbed him and to support Thomas' conviction for aggravated robbery.

*Thomas*, No. 09-12-00458-CR at 3-4. That determination is not contrary to or based on an unreasonable application of clearly established Federal law.

A legal sufficiency claim presents a mixed question of law and fact and is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 325 (1979). Under that standard, a petitioner

15

must prove that no rational trier of fact could have found the existence of facts necessary to establish the offense beyond a reasonable doubt. *Id.* at 325-26.  In applying the standard, all evidence is viewed in the light most favorable to the prosecution, *id.* at 319; *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983), *cert. denied*, 464 U.S. 1049 (1984), and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982).

Here, the facts set forth by the Texas Court of Appeals in connection with Thomas' direct appeal constitute legally sufficient evidence to support Thomas' conviction for aggravated robbery. From the facts, the jury could have found – from the eyewitness testimony of the complainant, Mohammad Ali Mehboob – that Thomas entered the Mehboob residence, intentionally threatened Ali Mehboob, exhibited and/or used a deadly weapon, and unlawfully appropriated property from the residence, some of which belonged to Ali Mehboob.   Upon this record, the Texas Court of Appeals' rejection of Thomas' legal sufficiency claim was not unreasonable within the meaning of § 2254(d).  Therefore, no relief is available on this claim.

### F.    Defective Jury Charge Claim

In claim 5, Thomas maintains that the jury charge was defective for failing to "state who [the] property was allegedly taken from or who was the owner or in possession of property allegedly taken.  The jury charge abstractly defined terms such as "owner" that were not applied to the facts of the case."  § 2254 Application (Document No. 1 at 12).

To be entitled to federal habeas corpus relief on an improper jury instruction claim, a habeas petitioner must establish that the erroneous instruction was so prejudicial that it negatively affected the outcome of the trial. *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir.), *cert. denied*, 464 U.S. 1002

(1983).  An improper jury instruction violates a defendant's constitutional rights if the instruction "by itself so infected the entire trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  In a collateral proceeding, such as this, the question is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned'", but "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Id.*  Given this standard, it is rare that an improper jury instruction will warrant the reversal of a criminal conviction; it is even more rare that an improper jury instruction will warrant the reversal of a criminal conviction if an objection to the allegedly improper instruction  has not been made in the trial court. *Id.*

Here, while Thomas complains that the jury charge did not require the jury to find that he deprived any specific person of any specific property, Thomas has not pointed to any authority that would require such a specific instruction to the jury or a such a specific finding to support an aggravated robbery conviction.  The jury was charged in this case as to all the elements of an aggravated robbery offense.  In addition, the jury was instructed on the law of parties, as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of an offense.  A person is criminally liable as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  Each party to an offense may be charged with the commission of the offense.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense,

17

he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  Thus, depending on the circumstances, a person may be a party to an offense whether or not they were present during, or participated in, the actual commission of the offense.  However, mere presence alone will not constitute one a party to an offense.

(Document No. 8-2 at 49).  The jury was then instructed that it could find Thomas guilty if they found that he, "while in the course of committing theft of property and with intent to obtain or maintain control over said property, intentionally or knowingly threaten[ed] or place[d] Mohammad Mehboob in fear of imminent bodily injury or death, and . . . use[d] or exhibit[ed] a deadly weapon" *or* if they found that he acted "with intent to promote or assist" Christopher Colvin "in the commission of the aggravated robbery. "  *Id.* at 49-50.

Because the evidence showed that Thomas and Colvin, acting together, took property from the Mehboob residence, threatened Mohammad Ali Mehboob, and used/exhibited deadly weapons, Thomas has not shown that the jury charge was improper under state law, or that the jury charge affected his right to due process.  As such, the Texas Court of Criminal Appeals' rejection of Thomas' defective jury charge claim is not contrary to or based on an unreasonable application of clearly established federal law.  No relief is available on this claim under § 2254(d).

### G.    Ineffective Assistance of Counsel Claim

In a slew of claims (claims 3(a) -3(o), Thomas maintains that his trial counsel was ineffective.  These claims were raised by Thomas in his state application for writ of habeas corpus and rejected by the Texas Court of Criminal Appeals on the merits.  In connection therewith, the Texas Court of Criminal Appeals relied upon the following findings of fact and conclusions of law made by the state trial court:

<u>FINDINGS OF FACT</u>

* * *

9.    The Court is familiar with the performance of [Thomas'] trial attorney, Mike Aduddell, who has long practiced in the courts of Montgomery County and is well-qualified for appointment as trial counsel in criminal cases.

10.   Aduddell submitted a credible affidavit in answer to [Thomas'] claims of deficient performance.

11.   Aduddell investigated whether an expert on cross-racial identification would provide testimony beneficial to the defensive theory and concluded it would not.

12.   Aduddell made a reasoned decision not to admit evidence – including testimony regarding the length of [Thomas'] hair or the potential errors in cross-racial identification – to develop a defensive theory that Ali mistakenly identified [Thomas] in the photo-lineup.

13.   Aduddell's advice to [Thomas] resulting in the decision to request the removal of the jury instruction regarding the extraneous offenses was part of a reasoned trial strategy.

14.   Aduddell's advice to [Thomas] – resulting in the decision not to move to strike Hasan Mehboob's testimony following Hasan's refusal to answer numerous questions – was based on a reasoned trial strategy of attempting to portray Hasan's initial identification of [Thomas] as a suspect as false and as revenge for a drug deal gone bad.

15.   [Thomas] did not request an attorney prior to or during the portion of the video interview admitted into evidence as State's exhibit 62.

16.   The portions of the video interview redacted from State's exhibit 62 contained references to extraneous offenses and [Thomas'] request for an attorney.

17.   The unredacted version of [Thomas'] interview would have shown him acknowledging other unrelated extraneous offenses and requesting court-appointed counsel.

18.   There is no credible evidence indicating that portion of [Thomas'] custodial interview admitted into evidence and shown to the jury was involuntary. [Thomas'] claim to the contrary is not credible.

19.  The evidence presented to the jury established that [Thomas] had a short haircut at the time of this arrest.  Ali identified [Thomas] in a photo lineup showing [Thomas'] short hair, despite Ali's earlier description of [Thomas] as having a "poofy" afro.

## CONCLUSIONS OF LAW

* * *

2.  [Thomas] has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 669 (1984).

* * *

7.  Evidence of the extraneous offense regarding Hasan was admissible, and counsel was not ineffective for failing to object to that testimony.  *See* TEX. R. EVID. 403, 404.

8.  The indictment in this case alleged all the elements required, and counsel was not deficient for failing to file a motion to quash the indictment.  *See Hill v. State*, 568 S.W.2d 338, 339 (Tex. Crim. App. 1978).

9.  The jury charge contained all the elements required for the offense of aggravated robbery.

10.  Counsel was not deficient for failing to offer the unredacted portion of [Thomas'] interview because that evidence would have been highly prejudicial to [Thomas], and would not have advanced [Thomas'] defensive theory in any material respect.

Findings of Fact and Conclusions of Law at 2-4 (Document No. 14-5 at 55-59).  As set forth below, the Texas Court of Criminal Appeals' rejection of Thomas' ineffectiveness claims is not contrary to or based on an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The clearly established Federal Law applicable to claims of ineffective assistance of trial counsel is contained in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme

Court determined that relief is available if a petitioner can show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378; *Cullen*, 131 S.Ct. at 1403 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result") (quoting *Strickland*, 466 U.S. at 686)). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S.

at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense.  *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984).  The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.  *Strickland*, 466 U.S. at 690-691.  Counsel will not be judged ineffective only by hindsight.  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."  *Yarborough v. Gentry*, 540 U.S. 1, 124 S.Ct. 1, 6 (2003).

When an ineffective assistance of counsel claim has been adjudicated on the merits by the state courts, federal habeas review is "doubly deferential," with the court taking a "highly deferential look at counsel's performance" under *Strickland*, and then imposing a second layer of deference under § 2254(d).  *Cullen*, 131 S.Ct. at 1403.  Under § 2254(d), therefore, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Richter*, 131 S.Ct. at 788.  As for *Strickland's* prejudice prong, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."  *Richter*, 131 S.Ct. at 791.  Instead, the question is whether "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.  *Id.* at 786.  If "'fairminded jurists could disagree' on the correctness of the state court's decision," § 2254(d)(1)

22

precludes relief.  *Id.* at 786.  In contrast, where there is no "possibility that fairminded jurists could disagree" and fairminded jurists would uniformly conclude that the state court's decision is contrary to, or based on an unreasonable application of clearly established Federal law, relief is available under § 2254(d)(1).  *Id.*

Here, both Thomas' ineffectiveness claims and the Texas Court of Criminal Appeals' rejection of those claims must be viewed in the context of the seven day delay between the commission of the offense and Thomas' arrest, as well as Thomas' fugitive status from June 3, 2011, when he failed to appear in court and his bond was revoked and forfeited, to October 2011, when he was arrested in Mexico and returned to the United States.  In that regard, the record shows that the offense occurred on January 5, 2010.  Thomas was arrested on January 12, 2010 – some seven days later.  In addition, the record shows that bond was initially set at $200,000, but was reduced to $70,000, on August 13, 2010.   Thomas posted bond and was released, but he failed to appear in court on June 3, 2011, at which time a warrant was issued for his arrest.  He was thereafter found in Mexico in October 2011, and returned to the United States.  Both the week period of time between the commission of the offense and Thomas' arrest, and Thomas' subsequent fugitive status, information about which counsel successfully kept from the jury, has bearing on several of Thomas' ineffectiveness claims.  For example, Thomas' complaints about counsel's failure to point out, or capitalize, on the complainant's description of his hair/hairstyle (claims 3(a) - 3(d)), can be attributed to  counsel's desire to keep the jury from learning, or focusing on, the one week delay between the commission of the offense and Thomas' arrest – a week during which Thomas could have cut his hair.[3]  Similarly,  Thomas' complaints about counsel's performance vis-a-vis the admission of his

---

[3] In addition, and in any event, the record shows, as pointed out by Respondent, that counsel did try to point out the inconsistencies between the complainant's description of the

statement (claims 3(i) - 3(k)) must be viewed in the context of that same delay between the commission of the offense and Thomas' arrest, and counsel's desire to keep Thomas' subsequent flight to Mexico from the jury.   As for Thomas' complaints about the extraneous offense evidence (claim 3(e) and 3(g)), and the decision not to insist on a jury instruction on the consideration of extraneous offense evidence (claim 3(f)), the contents of counsel's affidavit, which the Texas Courts found to be credible, address those complaints and provide a reasoned, strategic basis for counsel's actions and/or performance.[4]   Finally, with regard to Thomas' complaints about counsel's failure to file a motion to quash the indictment (claim 3(h)), and counsel's failure to object to allegedly improper statements and argument by the  prosecutor (claims 3(l) - 3(o)), each action Thomas contends his attorney should have taken was determined by the Texas courts not to have been viable. In particular, the Texas courts found that the indictment alleged all the required elements and was sufficient, and that the complained of arguments by the prosecutor were not improper.  Thomas has

---

assailant's hair, and Thomas' hair in his booking photo.  There is no reasonable probability, on this record, that any further efforts by counsel would have been more successful.

[4] In addition, the record is crystal clear that it was a strategic decision on counsel's part, agreed to by Thomas on the record, not to include a jury instruction on the consideration of extraneous offense evidence:

> The Court:  Okay.  We're on the Record.  The Court has prepared a charge. We're just talking about one singular issue right now, that being whether we're going to add extraneous offense.  I had placed it in here, not knowing whether defendant would want it; but I'm understanding now from counsel it's not being requested and you want it out?
> Mr. Aduddell:  Again, for purposes only of this – of this issue, and not waiving attorney/client privilege, do you want it in or out?
> The Defendant:  I want it out.
> Mr. Aduddell:  We'll take it out, Judge.  Strategic decision on my part, my counsel to the client.
> The Court:  Tell me again.
> Mr. Aduddell:  It is a strategic decision.
> The Court:  Yes.  Okay.  The Record reflects. . . .

Trial on the Merits, Vol. 4 at 278 (Document No. 9-2 at 91) .

pointed to no authority, much less clearly established Federal law, that calls into question any of these determinations by the Texas courts.

Based on the explanations provided by counsel in the lengthy and detailed affidavit he filed in the state habeas proceeding (Document No. 14-4 at 98-103), and the state courts' finding that the affidavit was credible (Document No. 14-5 at 56 ("Aduddell submitted a credible affidavit in answer to the applicant's claims of deficient performance."), Thomas cannot show that counsel's performance in any regard was deficient or that he was prejudiced thereby. Because reasonable jurists would not disagree with this assessment, § 2254(d) precludes relief on Thomas' ineffective assistance of counsel claim(s).

## VII.   Conclusion and Recommendation

Based on the foregoing and the conclusion that no relief is available to Thomas on the merits of any of his claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 18) be GRANTED, and that Petitioner Isaac Lamar Thomas' Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d

404, 408 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk.

     Signed at Houston, Texas, this 8th day of February, 2017.

Frances H. Stacy
United States Magistrate Judge